# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JAMES HARRIS and ADAM VIGNOLA, derivatively on behalf of FAT BRANDS INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 2021-0511-SG |
| SQUIRE JUNGER, JAMES NEUHAUSER, EDWARD H. RENSI, ANDREW A. WIEDERHORN, FOG CUTTER HOLDINGS, LLC, and FOG CUTTER CAPITAL GROUP, INC., | ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| FAT BRANDS INC., | ) ) | |
| Nominal Defendant. | ) ) | |

## MEMORANDUM OPINION

Date Submitted: February 11, 2022
Date Decided: May 25, 2022

Stephen E. Jenkins and Richard D. Heins, of ASHBY & GEDDES, Wilmington, Delaware; OF COUNSEL: Donald J. Enright, Elizabeth K. Tripodi, and Brian D. Stewart, of LEVI & KORSINSKY, LLP, Washington, D.C.; and D. Seamus Kaskela, of KASKELA LAW LLC, Newtown Square, Pennsylvania, *Attorneys for the Plaintiffs*.

Brock E. Czeschin, of RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; OF COUNSEL: John P. Stigi III, of SHEPPARD, MULLIN, RICHTER, & HAMPTON LLP, Los Angeles, California, *Attorneys for the Defendants*.

**GLASSCOCK, Vice Chancellor**

This brief Memorandum Opinion addresses the outstanding portions of the Defendants' motion to dismiss this action (the "Motion") that were not resolved at oral argument.[1] The Complaint in this action brings claims against alleged fiduciaries of Fat Brands Inc. ("Fat Brands") for their purported roles in orchestrating a merger between Fat Brands and Fog Cutter Capital Group, Inc. ("Fog Capital") that closed in December 2020 (the "Merger").[2] The Complaint also challenges a series of loans made by Fat Brands to Fog Capital before the Merger.[3]

I heard oral argument on this matter on February 11, 2022. One of the great tort doctrines is *res ipsa loquitur*—the thing speaks for itself. Because much of the work of this Court involves case-dispositive motion practice featuring Plaintiff-friendly inferences, concerning the motivation of fiduciaries, a kind of equitable analog of *res ipsa loquitur* applies in certain cases of equitable torts—so it was here. I denied most of the Motion to Dismiss from the bench following oral argument, because it was reasonably conceivable that the Merger as pled was so inimical to Fat Brands that it constituted corporate waste or bad faith.[4] I reserved judgment, however, regarding two issues. First, whether the Complaint stated a

[1] Defs.' Mot. Dismiss Verified Stockholder Derivative Compl. Breach Fiduciary Duty, Unjust Enrichment and Waste Corporate Assets, Dkt. No. 9 [hereinafter "Defs.' Mot."].
[2] Verified Stockholder Derivative Compl. Breach Fiduciary Duty, Unjust Enrichment and Waste Corporate Assets, Dkt. No. 1 ¶¶ 136–58 [hereinafter the "Compl."].
[3] *See, e.g.*, *id.* ¶¶ 148, 156–57.
[4] Tr. Oral Arg. Rulings of the Court Defs.' Mot. Dismiss, Dkt. No. 37 at 60:5–63:5 [hereinafter "Oral Arg. Tr."].

claim against a Fat Brands director, Squire Junger, who participated in approving the pre-Merger loans to Fog Capital, but abstained from voting on the Merger itself because he was conflicted.[5] And second, whether Count II, an unjust enrichment claim, should be dismissed as duplicative of a fiduciary duty claim brought against the same Defendant, Fog Cutter Holdings, LLC.[6] As discussed below, this Memorandum Opinion concludes that both the unjust enrichment claim and the claims against Defendant Junger are plausible,[7] and thus, the remainder of the Motion is denied.

## I. BACKGROUND

This brief Memorandum Opinion outlines only the facts necessary to address the unjust enrichment claim and the claims against Defendant Junger. Interested readers should refer to the oral argument transcript for a fuller discussion of the facts alleged in the Complaint.[8]

*A. Factual Background*

Before the Merger, Fog Capital owned 81.2% of Fat Brands' common stock and voting power.[9] Fog Capital's only business was as a holding company for the controlling interest in Fat Brands—it had no other business purpose (other than

---

[5] *Id.*
[6] *Id.*
[7] By which term I mean "reasonably conceivable."
[8] *See generally* Oral Arg. Tr.
[9] Compl. ¶ 34.

holding certain "net operating loss carryforwards").[10] Fog Capital was, in turn, owned 72% by Defendant Andrew A. Wiederhorn and certain family members.[11] A third Wiederhorn-related entity, Defendant Fog Cutter Holdings, LLC ("Fog Holdings"), controlled 7,372,419 shares of Fog Capital common stock prior to the Merger.[12] Defendant Junger was a non-employee director of Fat Brands and a Fog Capital stockholder.[13]

In the years leading up to the Merger, Wiederhorn borrowed approximately $16 million from Fog Capital.[14] Again, Fog Capital had no substantial business operations besides its holdings in Fat Brands. Accordingly, because Fog Capital lacked a source of cash flow, it in turn borrowed from Fat Brands to fund the cash advances to Wiederhorn, first pursuant to an October 20, 2017 Intercompany Promissory Note (the "Original Note") and additional intercompany loans, and later pursuant to an April 24, 2020 Intercompany Revolving Credit Agreement (the "Intercompany Agreement").[15] Thus, Wiederhorn was indebted to Fog Capital, which (via the Intercompany Agreement and the Original Note) was indebted to Fat Brands, with both loans taken to facilitate Wiederhorn's interests.

---

[10] *Id.* ¶¶ 4–6, 51–52.
[11] *Id.*
[12] *Id.* ¶ 35.
[13] *Id.* ¶ 33.
[14] *Id.* ¶ 5.
[15] *Id.* ¶¶ 6–7, 45.

4

Wiederhorn proposed the Intercompany Agreement to the Fat Brands Board on April 14, 2020.[16] The Board, including Defendant Junger, approved the Intercompany Agreement the same day.[17] The initial balance under the Intercompany Agreement was $21,067,000, which included the balance of the Original Note and other loans made after the Original Note.[18] The Fat Brands Board, including Defendant Junger, later approved several additional disbursements to Fog Capital under the Intercompany Agreement.[19]

Although Fat Brands was lending to Fog Capital pursuant to the Intercompany Agreement at a 10% interest rate,[20] Fat Brands was *borrowing* at a 20% interest rate. Specifically, in 2019, Fat Brands ran short of cash, and borrowed $20 million from The Lion Fund at a 20% interest rate, secured by a lien on "substantially all of its assets."[21] Fog Capital was in turn lending to Wiederhorn at a *5%* interest rate.[22]

The loans from Fog Capital to Wiederhorn were never repaid. By June 28, 2020, Fog Capital had forgiven the cash advances to Wiederhorn, which at that time totaled over $16 million, without any repayment.[23] But Fog Capital still owed a significant balance to Fat Brands: By September 27, 2020, Fog Capital and its

---

[16] *Id.* ¶ 49.
[17] *Id.*
[18] *Id.* ¶ 50.
[19] *E.g., id.* ¶¶ 53–54, 63.
[20] *Id.* ¶ 49.
[21] *Id.* ¶ 8.
[22] *Id.* ¶ 5.
[23] Compl. ¶¶ 9, 15, 62.

affiliates owed Fat Brands $38,732,000 under the Intercompany Agreement.[24] According to the Complaint, Wiederhorn therefore orchestrated the Merger of Fog Capital and Fat Brands to eliminate that debt.

Wiederhorn had initially proposed a merger of Fog Capital and Fat Brands in 2019.[25] In September 2019, after Wiederhorn had proposed the potential merger, the Fat Brands Board formed a special committee—which included Defendant Junger even though he was a Fog Capital stockholder—to evaluate the potential transaction.[26]

The Board disbanded that initial special committee in May 2020.[27] But the full Board, including Junger, continued to discuss a potential merger. Less than a month after the 2019 special committee disbanded, on June 2, 2020, Wiederhorn "updated" the Board "on the "FAT/[Fog Capital] merger process and a possible timeline update."[28] The full Board, including Junger, continued to discuss the potential merger, with no special committee in place, on June 16, 2020, June 30, 2020, July 13, 2020, and July 28, 2020.[29] During this period, on July 13, 2020, the

---

[24] *Id.* ¶ 7.
[25] *Id.* ¶ 47.
[26] *Id.*
[27] *Id.* ¶ 57.
[28] *Id.* ¶ 59.
[29] *Id.* ¶ 60.

Board approved a $1 million loan to Fog Capital under the Intercompany Agreement.[30]

The Board then voted to establish a second special committee on August 18, 2020, this time without Junger as a member (the "Special Committee").[31] The full Board, however, continued to discuss the potential merger at thirteen subsequent Board meetings from August 25, 2020 through December 8, 2020.[32] The Board failed to approve the Special Committee's charter until September 29, 2020.[33]

The Special Committee met for the first time on September 24, 2020, and it continued to meet through December 2020.[34] On December 9, 2020, the Special Committee met for the last time and determined that the Merger was "advisable, fair to, and in the best interests of [Fat Brands] and its stockholders other than [Fog Capital]."[35] However, the Special Committee never received a fairness opinion that the Merger was in the best interests of Fat Brands.[36] In fact, the Special Committee's financial advisor had disclosed to the Special Committee that the Company would lose $50.2 million in value by entering into the Merger, as a result of Fog Capital "obligations forgiven or transferred to [Fat Brands]."[37]

---

[30] *Id.* ¶ 63.
[31] *Id.* ¶ 64.
[32] *Id.* ¶ 60.
[33] *Id.* ¶ 70.
[34] *Id.* ¶¶ 68–90.
[35] *Id.* ¶¶ 88–89, 97.
[36] *Id.* ¶ 18.
[37] *See id.* ¶¶ 97–04.

In light of this loss of value, the Special Committee attempted to mollify potential concerns of the minority stockholders by issuing them preferred stock in Fat Brands, in an amount that purportedly offset the loss in value caused by the Merger.[38] Accordingly, the Special Committee's financial advisor rendered a fairness opinion that the Merger was fair to Fat Brands' unaffiliated stockholders, but it did not determine that the Merger was fair to Fat Brands itself.[39]

The full Board met on December 10, 2020.[40] Without Wiederhorn present, the Board discussed the Special Committee recommendation to approve the Merger.[41] Junger then reminded the Board that he owned stock in Fog Capital and would therefore abstain from voting.[42] The remaining two Board members, both of whom had served on the Special Committee, then voted to approve the Merger.[43]

Fat Brands and Fog Capital completed the Merger on December 24, 2020, without a vote of the unaffiliated Fat Brands stockholders.[44] The Merger was structured such that Fog Holdings, which controlled 7,372,419 shares of Fog Capital prior to the Merger, became the largest Fat Brands stockholder after the Merger closed, holding approximately 71% of Fat Brands common stock.[45] At oral

---

[38] *Id.* ¶¶ 99–02.
[39] *Id.* ¶ 18.
[40] *Id.* ¶ 91.
[41] *Id.* ¶¶ 91–92.
[42] *Id.* ¶ 92.
[43] *Id.*
[44] *Id.* ¶ 14.
[45] *Id.* ¶¶ 35, 96.

argument, I held that it was reasonably conceivable that the Merger was the product of bad faith or corporate waste because the terms were facially inimical to the Company.[46]

### B. Procedural History

The Plaintiff initiated this action on June 10, 2021.[47] The Defendants filed the Motion on August 5, 2021,[48] and the parties fully briefed the Motion by October 29, 2021.[49] I held oral argument on the Motion on February 11, 2022.[50] At oral argument, I denied the Motion in large part, and reserved judgment with respect to the claims against Defendant Junger and the unjust enrichment claim against Fog Holdings.[51] I consider those remaining claims fully submitted as of the February 11, 2022 oral argument.

## II. ANALYSIS

### A. Standard of Review

The Complaint brings claims against Fat Brands' alleged fiduciaries, derivatively on behalf of Fat Brands.[52] The Defendants have moved to dismiss only under Rule 12(b)(6), however, and do not dispute that Rule 23.1's demand

---

[46] *See* Oral Arg. Tr. at 60:5–63:5.
[47] *See generally* Compl.
[48] Defs.' Mot.
[49] *See* Defs.' Opening Br. Supp. Mot. Dismiss, Dkt. No. 12 [hereinafter "Defs.' OB"]; Pls.' Answering Br. Opp. Defs.' Mot. Dismiss, Dkt. No. 19; Defs.' Reply Br. Further Supp. Mot. Dismiss, Dkt. No. 24 [hereinafter "Defs.' RB"].
[50] *See generally* Oral Arg. Tr.
[51] *Id.* at 60:5–63:5.
[52] Compl. ¶¶ 119–58.

requirement is excused.[53]  At this pleading stage, on a motion to dismiss under Rule 12(b)(6), I must take as true all well-pled allegations and draw inferences therefrom in the light most favorable to the Plaintiffs.[54]  I may only grant the Motion if I find it not "reasonably conceivable" that the Plaintiffs may prevail.[55]

### B. The Claims Against Defendant Junger Are Sustained

The Complaint brings breach of fiduciary duty and waste claims against Junger for his role in the Merger and for approving the loans made by Fat Brands to Fog Capital.[56]  At oral argument, I held that the alleged terms of the Merger were so inimical to the Company that they were reasonably conceivably the product of bad faith or corporate waste.[57]

The loans to Fog Capital pursuant to the Intercompany Agreement and the Original Note, likewise, were the reasonably conceivable product of bad faith or waste.  This Court has described waste as akin to "a subset of good faith under the umbrella of the duty of loyalty."[58]  To state a claim for waste, it must be reasonably conceivable that the transaction at issue was "so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received

---

[53] *See* Defs.' OB at 17–18.
[54] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Holdings LLC*, 27 A.3d 531, 536–37 (Del. 2011).
[55] *Id.*
[56] Compl. ¶¶ 136–40, 154–58.
[57] Oral Arg. Tr. at 60:5–63:5.
[58] *Friedman v. Dolan*, 2015 WL 4040806, at *5 n.32 (Del. Ch. June 30, 2015).

adequate consideration."[59] "Most often the claim is associated with a transfer of corporate assets that serves no corporate purpose; or for which no consideration at all is received. Such a transfer is in effect a gift."[60]

The Defendants contend, therefore, that the loans made under the Intercompany Agreement, including the balance of the Original Note, could not constitute waste because they bore consideration in the form of a 10% interest rate.[61] But the Complaint alleges that Junger and the other Board members knew that Fog Capital had no ability or intention to repay Fat Brands when they approved the Intercompany Agreement: They knew that Fog Capital had no business operations, and they continued to approve loans to Fog Capital even after Fog Capital forgave its cash advances to Wiederhorn, which represented Fog Capital's only source of funds to repay the loans.[62] And they continued to approve loans to Fog Capital even while negotiating a Merger that was designed to (and ultimately did) forgive those loans.[63] Moreover, the cost of borrowing funds to make the cash advances was much higher than the interest rate charged.[64] Under these alleged facts, it is reasonably conceivable that the Intercompany Agreement constituted bad faith and corporate waste.

---

[59] *Glazer v. Zapata Corp.*, 658 A.2d 176, 183 (Del. Ch. 1993).
[60] *Lewis v. Vogelstein*, 699 A.2d 327, 336 (Del. Ch. 1997).
[61] Defs.' OB at 40.
[62] *See supra* notes 10, 23, 29–30 and accompanying text.
[63] *See supra* notes 29–30 and accompanying text.
[64] *See supra* notes 20–22 and accompanying text.

Having determined that both the Merger and the loans from Fat Brands to Fog Capital constituted reasonably conceivable bad faith and waste, I turn to the question of Defendant Junger's liability. Junger argues that he should be dismissed because he was not a member of the Special Committee that negotiated the Merger, and because he abstained from voting on the Merger.[65] However, it is reasonable to infer from the allegations of the Complaint that Junger played a role in negotiating the Merger. Notably, Junger was a member of the initial special committee formed to consider a merger of Fat Brands and Fog Capital.[66] Although that special committee disbanded in May 2020, the Board, including Junger, continued to discuss the Merger, with no special committee in place, between June and August 2020.[67] Even after the Board approved the Special Committee's charter in September 2020, the Board, including Junger, continued to discuss the Merger at regular Board meetings.[68]

Together, these facts give rise to a reasonable inference that Junger was involved in the Merger negotiations, even if he did not participate in Special Committee meetings or vote to approve the Merger. Directors who were involved in negotiating a transaction cannot "shield themselves from any exposure to

---

[65] Defs. OB § I.C; Defs.' RB § II.
[66] *See supra* note 26 and accompanying text.
[67] *See supra* notes 28–29 and accompanying text.
[68] *See supra* note 32 and accompanying text.

12

liability" by "deliberately absent[ing] themselves from the directors' meeting at which the proposal is to be voted upon."[69] Accordingly, it is reasonably conceivable at this pleading stage that Junger breached his duty of good faith by participating in negotiating a Merger that constituted corporate waste.[70]

With respect to the Intercompany Agreement and the Original Note, Junger makes no argument that he should be dismissed for lack of involvement. Indeed, the Complaint alleges that the full Board, including Junger, approved the Intercompany Agreement itself and each of the loans made pursuant to it. As discussed above, it is reasonably conceivable that the Intercompany Agreement and Original Note loans constituted waste. It is therefore reasonably conceivable that Junger is liable for approving them.

Accordingly, I decline to dismiss the breach of fiduciary duty claims, Counts I and V, against Junger.

### C. The Unjust Enrichment Claim Against Fog Holdings

Turning to the unjust enrichment claim against Fog Holdings, the Complaint alleges that Fog Holdings was unjustly enriched by the Merger because it received benefits from the transaction that exceeded the consideration it provided, including

---

[69] *In re Tri-Star Pictures, Inc., Litig.*, 1995 WL 106520, at *3 (Del. Ch. Mar. 9, 1995).
[70] *See Lockton v. Rogers*, 2022 WL 604011, at *13 (Del. Ch. Mar. 1, 2022) (reasonably conceivable that director "breached his duty of loyalty by participating in the Merger negotiations" despite refraining from voting on the transaction).

the forgiveness of Fog Capital's liabilities to Fat Brands.[71]  Under Delaware law, a claim for unjust enrichment has five elements:  "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law."[72]

Fog Holdings does not attack the merits of the unjust enrichment claim, except to say that it should be dismissed to the extent that the breach of fiduciary claim against it is dismissed.[73]  Fog Holdings is correct that "an unjust enrichment claim that is entirely duplicative of a breach of fiduciary duty claim—*i.e.*, where both claims are premised on the same purported breach of fiduciary duty—is frequently treated 'in the same manner when resolving a motion to dismiss.'"[74]  But that does not save Fog Holdings here, because I have already declined to dismiss the breach of fiduciary claim against Fog Holdings at oral argument.[75]  Accordingly, although I am skeptical that the unjust enrichment claim will entitle the Plaintiffs to any relief that is independent of the relief for their breach of fiduciary claim, I decline to dismiss the unjust enrichment claim against Fog Holdings at this pleading stage.[76]

---

[71] Compl. 150–53.

[72] *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010).

[73] Defs.' OB at 36–37; Defs.' RB at 21–22.

[74] *Calma on Behalf of Citrix Sys., Inc. v. Templeton*, 114 A.3d 563, 591 (Del. Ch. 2015) (quoting *Frank v. Elgamal*, 2014 WL 957550, at *31 (Del. Ch. Mar. 10, 2014)).

[75] Oral Arg. Tr. at 60:5–63:5.

[76] *See Espinoza v. Zuckerberg*, 124 A.3d 47, 66–67 (Del. Ch. 2015) ("If defendants' sole basis for summary judgment on a duplicative unjust enrichment claim is the failure of the underlying claim for breach of fiduciary duty, then the survival of the fiduciary duty claim logically allows the claim for unjust enrichment to survive as well.").

14

## III. CONCLUSION

For the forgoing reasons, the Defendants' Motion is DENIED in its entirety.

An Order is attached.

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| JAMES HARRIS AND ADAM VIGNOLA, derivatively on behalf of FAT BRANDS INC., | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) C.A. No. 2021-0511-SG ) ) |
| SQUIRE JUNGER. JAMES NEUHAUSER, EDWARD H. RENSI, ANDREW A. WIEDERHORN, FOG CUTTER HOLDINGS, LLC, and FOG CUTTER CAPITAL GROUP, INC., | ) ) ) ) ) ) |
| Defendants, | ) ) |
| and | ) ) |
| FAT BRANDS INC., | ) ) |
| Nominal Defendant. | ) ) |

## Order

AND NOW, this 25th day of May, 2022, for the reasons set forth contemporaneously in the attached Memorandum Opinion dated May 25, 2022, and in this Court's bench ruling dated February 11, 2022, IT IS HEREBY ORDERED that the Defendants' Motion to Dismiss is DENIED.

/s/ Sam Glasscock III

Vice Chancellor

16